# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7438 | **DATE** | 3/12/2003 |
| **CASE TITLE** | Washington et al. vs. Village of Riverside et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendants' Motions for Summary Judgment are granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **4** | **Document Number** |
| | No notices required. | | number of notices | |
| ✔ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| FT/ *Seuy* | courtroom deputy's initials | | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAR 1 3 2003

MANUEL WASHINGTON and            )
DANIEL PARKER,                   )
                                 )
          Plaintiffs,            )
                                 )
     vs.                         )     Case No.: 01 C 7438
                                 )
VILLAGE OF RIVERSIDE ILLINOIS,   )
a Municipal Corporation, OFFICER )     Magistrate Judge
JEFFREY SIMPSON, OFFICER MARCUS  )     Arlander Keys
YANEZ, OFFICER LEO KOTOR JR.,    )
OFFICER WILLIAM NIESLUCHOWSKI,   )
SGT. TOM WEITZEL, VILLAGE OF LYONS )
ILLINOIS, a Municipal Corporation )
OFFICER JOHN MORELLI, OFFICER    )
FRANK TENTONICO., VILLAGE OF     )
BROOKFIELD ILLINOIS, a Municipal )
Corporation, VILLAGE OF BERWYN   )
ILLINOIS, a Municipal Corporation, )
                                 )
          Defendants.            )

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed suit against Defendants for injuries
allegedly suffered during a routine traffic stop, ensuing high
speed chase, and subsequent arrest. Plaintiffs allege that
Defendants used excessive force in arresting them, battered them,
falsely arrested and imprisoned them, and violated their
constitutional rights in a multitude of ways. Currently before
the Court are Defendants' Motions for Summary Judgment. For the
reasons set forth below, Defendants' Motions for Summary Judgment
are Granted.



## BACKGROUND FACTS

At approximately 2:00 a.m. on September 3, 2001, Officer
Jeffrey Simpson of the Riverside Police Department pulled over an
SUV with tinted windows that was allegedly speeding. Officer
Simpson stepped out of his vehicle, and shouted to the driver of
the SUV, Plaintiff Manuel Washington, to do the same. Instead,
Mr. Washington simply held both of his hands and his
identification out of the car window, apparently in an effort to
assure Officer Simpson that he did not have a weapon. The
passenger in the SUV, Plaintiff Daniel Parker, also remained in
the vehicle. Despite Officer Simpson's repeated instructions to
exit the vehicle, Messrs. Washington and Parker remained in the
SUV. As Officer Simpson slowly approached the vehicle, Mr.
Washington sped away.

Officer Simpson immediately called for backup on his radio
and began pursuing Mr. Washington's vehicle. Officer Simpson's
radio message was also picked up by the Lyons Police Department.
Shortly thereafter, a number of police cars, with lights flashing
and sirens sounding, joined Officer Simpson in his pursuit of Mr.
Washington's fleeing SUV. With several police cars trailing him,
Mr. Washington turned into the parking lot of a White Castle's
restaurant; he was forced to stop when a police car cut him off,
preventing him from exiting on the opposite side of the parking
lot.

Several officers approached the SUV with their weapons drawn. The officers pulled both Mr. Washington and Mr. Parker out of the vehicle. Both men resisted the officers' attempts to restrain and handcuff them. It took three officers to bring Mr. Washington, who is 6'5" tall and weighs approximately 250 pounds, to the ground and handcuff him. Two officers were able to handcuff Mr. Parker. Less than one minute elapsed between the time that the officers removed Plaintiffs from the vehicle and the time the Plaintiffs were handcuffed. A videotape of the arrest does not reveal that any of the officers choked, kicked, dragged, or used a baton on either of the men.

Both men were arrested and taken to the booking room of the Riverside Police Station. Mr. Washington was released after his bail was paid, but Mr. Parker was detained for several hours, until police confirmed that an outstanding felony warrant had been issued for his twin brother and not for him.

Plaintiffs allege that they incurred substantial damages due to their arrest. Mr. Parker visited Ingalls Memorial Hospital because of injuries to his thumb and other injuries. Notably, while Mr. Parker was in the Riverside Police Station, he claimed that he had injured his thumb while playing basketball. Mr. Parker missed two weeks of work at McDonald's following his arrest, but never informed his employer that he missed work because of injuries received during his arrest.

Following his arrest, Mr. Washington complained of pain in his right elbow and on the palm side of his right hand. Mr. Washington received treatment from a Dr. Tucker, at Dr. Tucker's home. Over the last several years, Dr. Tucker has treated fewer than 10 patients, and has seen them all in his home. Despite the rather informal nature of Dr. Tucker's practice, Mr. Washington claims that he incurred $19,800 in medical bills for the massages, muscle manipulation, electrical stimulation, and acupuncture that Dr. Tucker provided. Neither Mr. Washington nor Dr. Tucker were able to produce invoices or documentation supporting these charges. Similarly, although Mr. Washington claims that his business suffered as a result of his injuries, he refused to produce adequate business records to support his claim.

### Procedural History

Plaintiffs filed their Complaint on September 26, 2001. The case was initially assigned to Judge Guzman, and was subsequently referred to this Court for discovery matters. Plaintiffs filed a Motion to Dismiss the Village of Brookfield and Sgt. Tom Weitzel, which was granted on June 7, 2002. On August 27, 2002, the parties consented to proceed before this Court.

During the course of discovery, Defendants had a difficult time getting Plaintiffs to submit to deposition. This Court

4

issued a Minute Order on June 28, 2002, directing Mr. Washington to make himself available for deposition. Defendants subsequently filed a motion for entry of an order to obtain the deposition of Mr. Parker, which was granted on July 24, 2002. On August 9, 2002, defense counsel informed the Court that, despite the Court's June 28th Order, Mr. Washington's deposition had been cancelled, without explanation. Defendants filed a new round of sanctions motions, which were withdrawn when Mr. Washington finally submitted to a deposition approximately one week later.

On November 13, 2002, this Court set the briefing schedule for dispositive motions. The Court ordered Defendants to file their Motions for Summary Judgment by November 22, 2002, and directed Plaintiffs to file their Response to Defendants' Motions for Summary Judgment no later than January 10, 2003. Defendants filed two separate Motions for Summary Judgment; one Motion was filed on behalf of the Village of Riverside, and Officers Simpson, Yanex, Kotor, and Niesluchowski, and a second Motion was filed on behalf of the Village of Lyons and Officers Morelli and Tentonico.[1] On January 10th, however, Plaintiffs had not filed a

---

[1] Given the absence of a Response Brief and the evidence presented by Defendants, the decision to grant Defendants' Motions for Summary Judgment on all Counts was very straightforward. Therefore, to avoid confusion, the Court will discuss the arguments without identifying which Counts apply to which Defendants.

Response Brief, their Rule 56(b) Statement of Fact, or a Motion to Extend Time. Instead, Plaintiffs waited until February 5, 2003— almost 4 weeks after the Response Brief was due - to file the Motion for Extension of Time, and noticed the Motion for presentment on February 12, 2003.

On February 12, 2003, the Court held a hearing on Plaintiffs' Motion. Plaintiffs' counsel explained that, despite being given 6 weeks to respond to Defendants' Motions for Summary Judgment, "intervening matters" prevented her from responding in a timely manner, or even asking for an extension prior to Feb. 5, 2003. Counsel claimed that other professional obligations and her inability to confer extensively with her clients - a recurrent roadblock for counsel— prevented her from meeting the deadline. Counsel offered no reasonable explanation for why she waited approximately 1 month after her response brief was due, and approximately 10 weeks after the Motions for Summary Judgment were filed, to notify the Court and opposing counsel of these problems.

Counsel belatedly requested a 30 to 45 day extension so that she could contact Mr. Washington - who was apparently out of the country - and Mr. Parker - who is incarcerated in the Illinois prison system— in order to obtain affidavits from them to refute affidavits submitted by Defendants. Notably, counsel had not

discussed the affidavits with Plaintiffs and could not, therefore, know whether they could refute Defendants' evidence.

Notably, Plaintiffs' counsel did complain that Defendants had "surprised" her by submitting the deposition of eyewitness Sylvia Jurisch, in support of their Motions for Summary Judgment. Counsel argued that the additional time required to appropriately respond to this surprise evidence further warranted granting Plaintiffs' Motion. Plaintiffs' counsel claimed that she had never been notified of Ms. Jurisch's deposition, and first learned of the deposition when she read the Motions for Summary Judgment (which, apparently, was sometime in late January or early February of 2003). Defendants insisted that Plaintiffs' counsel had been notified of the deposition, explaining that they even held up the deposition in anticipation of her arrival (the deposition record reflects as much) and called her twice from the deposition to inquire as to her whereabouts.

Plaintiffs' counsel again denied receiving either notice of the deposition or the phone calls, insisting that she was not made aware of the deposition until she reviewed the Motions for Summary Judgment. Not content to leave well enough alone, Plaintiffs' counsel attacked defense counsels' credibility, attempting to highlight contradictions in defense counsels' claim that Plaintiffs' counsel was properly notified of the deposition.

Following the hearing, Defendants submitted unrefuted affidavits demonstrating that Defendants sent the appropriate notice to Plaintiffs' counsel in a timely manner, that defense counsel, Mr. Miller, contacted Plaintiffs' counsel on the morning of Ms. Jurich's deposition and confirmed that the deposition would be going forward that afternoon, and that defense counsel telephoned Plaintiffs' counsel from Ms. Jurisch's deposition in an attempt to ascertain whether she would be attending the deposition.

Defendants also submitted an affidavit from Ms. Piccolo, a manager with Cuda Reporting Services, who swore that she contacted Plaintiffs' counsel on November 11, 2002, and left her a voicemail message telling her that the deposition transcript from Ms. Jurisch's deposition was available. Ms. Piccolo further avowed that Plaintiffs' counsel called her twice on November 21, 2002, with regard to these transcripts, explaining that her clients were not willing to pay for copies of the transcript. This unrefuted evidence strongly contradicts Plaintiffs' counsel's version of events. Even if the Court were to set aside all of the affidavits filed by defense counsel and their employees, Ms. Piccolo – who is not affiliated with Defendants – establishes that Plaintiffs' counsel was aware of Mr. Jurisch's deposition at least by November 21, 2002.

In a Minute Order dated February 12, 2003, the Court denied Plaintiffs' Motion for the reasons stated in open Court; specifically, that counsel's explanation for the delay was suspect and that it would be prejudicial to Defendants to grant the Motion because counsel waited so long to file the Motion to extend.

## STANDARD OF REVIEW

The Court will grant summary judgment only if the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c)(2002). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

The moving party in a motion for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party's burden is met, then the nonmoving party must set forth specific facts showing that there is a genuine issue for trial in order to survive summary judgment. *Schacht v.*

*Wisconsin Dep't of Corrs.*, 175 F.3d 497, 504 (7th Cir. 1999).

Pursuant to Local Rule 56.1(a)(3), the party moving for summary judgment must provide a statement of material facts, which asserts that there are no genuine issues of material fact in dispute. The statement must be structured in the form of numbered paragraphs. Loc. R. 56.1(a). The opposing party must respond to each paragraph by either admitting or denying the allegations and specifically citing to supporting materials showing that there is a genuine factual dispute. Loc. R. 56.1(b)(3)(A). The opposing party may file a statement of additional facts that would defeat summary judgment, using the same form of numbered paragraphs with supporting citations. Loc. R. 56.1(b)(3)(B). Finally, the moving party may file a reply to any additional facts submitted by the opposing party. Loc. R. 56.1(a).

In a summary judgment proceeding, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Once properly supported, "all material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." Loc. R. 56.1(b)(3)(B). Similarly, all material facts properly supported in the opposing party's Rule 56.1(b)(3)(B) statement "will be deemed admitted unless controverted by the (reply)

statement of the moving party." Loc. R. 56.1(a). Failing to support one's statement with a citation to the record is equivalent to an admission of the other party's factual assertions. *Garrison v. Burke*, 165 F.3d 565, 567 (7th Cir. 1999).

As discussed above, Plaintiffs failed to file a Response Brief to the Motions for Summary Judgment, and failed to file a Rule 56.1 Statement in Response to Defendants' Statements of Material Fact. It is within the Court's discretion to require strict compliance with Local Rule 56.1. *Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1140 (7th Cir. 1997). The Court finds that Plaintiffs' failure to respond results in their admission of all facts asserted in, and properly supported by, Defendants' Rule 56.1 Statements of Fact[2].

Had Plaintiffs made a reasonable attempt to comply, or

---

[2] Defendants' summary judgment briefs make much of the contradictions between the videotape of Plaintiffs' arrest (which, according to the deposition testimony of eyewitness Ms. Jurisch, accurately depicted the arrest) and Plaintiffs' claims of brutality and taunting. Defendants argue that Plaintiffs cannot raise a genuine issue of material fact regarding excessive force through their deposition testimony, because the videotapes of the arrest contradict their testimony and demonstrate that the force used was not excessive but reasonable. *See McDaniel v. Eaglecare, Inc.*, No. 00-0413, 2002 WL 655691, at *7 (S.D. Ind. Mar. 8, 2002) (finding that a plaintiff's deposition testimony summarizing her version of a meeting could not create a genuine issue of fact where an audiotape of that meeting was available and contradicted the plaintiff's version of events.) Given Plaintiffs' failure to respond to Defendants' Rule 56 Statement of Fact, however, the material facts are admitted and resolution of Defendants' argument is unnecessary.

11

notified this Court and opposing counsel of the need for extra
time to respond in a more timely manner, the Court might have
afforded Plaintiffs wider latitude. The Court is also mindful of
Plaintiffs' half-hearted participation in the prosecution of this
case since its inception, and is not convinced that Plaintiffs
would have used a reasonable extension judiciously.

## DISCUSSION

Having determined that Plaintiffs have admitted all of the
material facts set forth in Defendants' Rule 56.1 Statement of
Material Facts, the Court turns to Defendants' substantive
arguments.

## I. Counts I and II: Excessive Force

Defendants argue that the Court should grant their Motions
for Summary Judgment with regard to Plaintiffs' excessive force
claim, because unimpeached objective evidence demonstrates that
the force used was reasonable under the circumstances.

The Seventh Circuit has identified the "objective
reasonableness" test as the standard for determining whether an
officer used excessive force during an arrest. *Smith v. City of
Chicago*, 242 F.3d 737, 743 (7th Cir. 2001). The Court must
examine all of the facts and circumstances, from the perspective
of the arresting officer, in determining whether the officer's
actions were objectively reasonable. *Id.* Specifically, the Court
considers "'the severity of the crime at issue, whether the

12

suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" *Id.* quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). In addition, courts must allow for "the fact that police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain, and rapidly evolving- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Although an arrest following the typical traffic stop does not usually warrant the use of force, a driver's decision to flee may justify an officer's subsequent use of force to arrest the driver. For example in *Cavazos v. Voorhies,* No. 00 7929, 2002 WL 31017492 (N.D. Ill. Sept. 9,2002), the court found that it was both reasonable for the arresting officer to believe that the driver was attempting to flee and that a higher degree of force was required in arresting the driver to protect the community. *Id.* at *2 (although the forced the officer used when arresting the plaintiff was justified by the plaintiff's flight and erratic behavior, the force the officer used when later transporting the plaintiff, who by that time was cooperative, was arguably not reasonable.)

In a document titled "Statement of Events," Mr. Washington claims that, during his arrest, the police choked him, forcibly

13

pulled his legs apart as if to break a wishbone, pulled his neck
and head back, dragged him and tried to smash his head into a
police car in the White Castle's parking lot. Defendants direct
the Court's attention to a videotape that recorded much of the
arrest and subsequent detention. The videotape of the arrest
contradicts Ms. Washington's assertions[3].

While the video reveals that the arresting officers did use
force in apprehending Plaintiffs, the Court agrees with
Defendants' assertion – and Plaintiffs' admission – that the
force used was reasonable, given the circumstances in this case.
Plaintiffs fled from the scene when a uniformed officer pulled
them over for a traffic violation and demanded that they exit the
vehicle. Several police cars, with sirens and lights activated,
chased Plaintiffs' vehicle, yet Plaintiffs refused to pull over.
Plaintiffs stopped their vehicle in a White Castle parking lot
only when a police car pulled in front of it, blocking
Plaintiffs' exit. Even after an officer pulled him from the car,
a reasonable person could conclude that Mr. Washington was
resisting the officers' attempt to handcuff him. Once the
officers were able to subdue Mr. Washington and handcuff him, the
level of physicality dropped dramatically. The entire arrest
lasted less than one minute.

---

[3] Ms. Sylvia Jurisch, who witnessed the arrests, testified
at her deposition that the videotape presented to the Court
accurately represents Plaintiffs' arrest.

Similarly, the videotape of Mr. Parker's arrest reveals that the force used was warranted by the circumstances. At no time did any officer use force that was unrelated to arresting the men, and as soon as Mr. Parker was handcuffed, the officers relented.

Under these circumstances, and in light of Plaintiffs' admissions, the Court finds that, as a matter of law, the degree of force used was reasonable and justified. Therefore, the Court grants Defendants' Motions for Summary Judgment on Plaintiffs' excessive force claims.

## II. COUNTS III AND IV: FAILURE TO PREVENT THE UNJUSTIFIED USE OF FORCE

In order to sustain a failure to intervene claim under § 1983, the officer "must have reason to know 1) that excessive force was being used, 2) that a citizen has been unjustifiably arrested[4], or 3) that any unconstitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene and prevent the harm from occurring." *Dawn v. Black*, No. 99 C 50386, 2003 WL 164244, at *2 (N.D. Ill. Jan. 23, 2003). Thus, there must at least be a genuine issue of material fact with regard to whether the forced used was unjustified. *Colone v. Burge,* No. 00 C 9008, 2002 WL

---

[4]  The Court also finds, as is discussed more extensively below, that summary judgment on Plaintiffs' false arrest/imprisonment claim is also appropriate.

31628205, at *6 (N.D. Ill. Nov. 21, 2002). An officer cannot be held liable for preventing the unjustified use of force, if it is determined that the use of force was justified. *Id.* Because the Court has granted Defendants' Motion for Summary Judgment on Plaintiffs' excessive force claim, the failure to intervene claims must fail as well. *Id.*

## III. COUNT V: EQUAL PROTECTION CLAIMS

Plaintiffs allege that the decision to initially stop and subsequently arrest them was based upon their race, in violation of the Equal Protection Clause. Defendants' conduct would violate the Equal Protection Clause if the decision to stop and arrest Plaintiffs had a discriminatory effect and was motivated by a discriminatory purpose. *Chavez v. Illinois State Police,* 251 F.3d 612, 635-36 (7th Cir. 2001).

Plaintiffs can demonstrate discriminatory effect if they are members of a protected class, they are otherwise similarly situated to persons outside the protected class, and they were treated differently from those persons outside the protected class. *Id.* at 636. In support of their claim that they were treated differently because of their race, Plaintiffs must submit evidence such as statistics establishing differentiation or identify individuals outside of the protected class who were treated differently in similar circumstances. *Id. at 636-38* Plaintiffs have failed to present any evidence whatsoever tending

16

to show that they were treated differently than similarly situated non-African Americans. Therefore, Plaintiffs' equal protection claims fails.

## IV.  COUNT VI: SECTION 1985(3) CLAIM FOR CIVIL CONSPIRACY

Plaintiffs further allege that the decision to stop their vehicle and to subsequently arrest them was part of a conspiracy to discriminate against them because of their race. To establish a §1985(3) civil conspiracy claim, Plaintiffs must demonstrate: 1) an express or implied agreement to deprive Plaintiffs of their constitutional rights; and 2) an overt act in furtherance of the agreement to deprive Plaintiffs of those rights. *Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir. 1988). Because Plaintiffs allege that the conspiracy was motivated by their race, proof of racial animus is also required. *Copeland v. Northwestern Memorial Hosp.,* 964 F. Supp. 1225, 1234-35 (N.D.Ill. 1997)(proof of racial animus is required only for causes of action, like this one, that arise under the first part of § 1985.) Plaintiffs cannot rely on the fact that Defendants were aware that they were African Americans to establish this motivation. Rather, Plaintiffs must plead "with some particularity facts sufficient to show an agreement between the parties to inflict the alleged wrong." *Frymire v. Peat, Marwick, Mitchell & Co.,* 657 F.Supp. 889, 896 (N.D.Ill. 1987).

17

In this case, Plaintiffs have offered no evidence that the officers pursuing and arresting them participated in a conspiracy motivated by their aversion to Plaintiffs' race. Other than Officer Simpson, the officer who initially stopped Plaintiffs' vehicle, none of the other officers even knew that Plaintiffs were African Americans. The tape recording of Officer Simpson's radio call requesting additional assistance never mentioned Plaintiffs' race.

Even if the Court were to assume that Officer Simpson stopped Plaintiffs' vehicle because they were African Americans—despite the lack of evidence that Officer Simpson was motivated by such racial animus— there is no evidence that any of the other Defendants shared the same conspiratorial objective. *Moss v. Perkins,* 682 F. Supp. 395, 396 (N.D. Ill. 1988)(Section 1985(3) claim fails absent evidence that each defendant knew the nature and scope of a single plan to discriminate.) The recorded communications between the officers indicate only an intention to apprehend individuals fleeing a traffic stop.

Moreover, the time between the initial stop and the subsequent arrest spanned only a few minutes. Given the short sequence of events, it is unlikely that there was even time to formulate an agreement between officers of different policing organizations to deprive Plaintiffs of their constitutional rights. Defendants' Motions for Summary Judgment are granted.

## V. COUNTS VII-X: *MONELL* POLICY/FAILURE TO TRAIN CLAIMS

Under the Supreme Court's decision in *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 690-91 (1978), a local government unit is liable for the conduct of its employees if the execution of the local government's "official policy" resulted in the deprivation of a constitutionally protected right. A municipality's failure to train its police officers gives rise to *Monell* liability only when the failure to train amounts to "deliberate indifference to the constitutional rights of its inhabitants." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389 (1989). Plaintiffs must also demonstrate that the Villages of Riverside and Lyons (the "Villages") had notice that the omission would likely result in a constitutional violation. *Palmquist v. Selvik,* 111 F.3d 1332, 1344 (7ᵗʰ Cir. 1997); *Hirsch v. Burke,* 40 F.3d 900, 904 (7ᵗʰ Cir. 1994) (noting that a plaintiff must "show that the defendants were on notice of a pattern of constitutional violations resulting from the inadequate training.")

Plaintiffs' claims that the Villages fostered an atmosphere which encouraged - or even permitted - Plaintiffs' constitutional rights to be violated fails, because: 1) there is no evidence that Plaintiffs' constitutional rights were violated; and 2) there is no evidence that the Villages had policies or customs encouraging their officers to violate the constitutional rights

19

of others.

Despite the fact that the Villages produced copies of their Police Department Policies and Procedures Manuals, Plaintiffs did not conduct any depositions concerning these manuals, and did not disclose any expert or opinion witnesses to testify about the inadequacies of the manuals. Plaintiffs' boilerplate "failure to train" allegations in their Complaint are insufficient to survive Defendants' Motion for Summary Judgment.

## VI.  COUNTS XI-XIV: STATE LAW BATTERY CLAIMS

Under Illinois law, a battery occurs when a defendant touches or causes bodily harm to the plaintiff without legal justification. 720 ILCS 5/12-3(a) (West 2003). The Tort Immunity Act immunizes public employees from liability while enforcing the law, unless their acts are willful and wanton. 745 ILCS 10/2-202 (West 2003). Because the Court has already determined that the force that Defendants utilized in arresting Plaintiffs was reasonable and justified, Plaintiffs' state law battery claims must fail.

## VII.  COUNTS XV-XVIII: FALSE ARREST/IMPRISONMENT

The Seventh Circuit has held that the existence of probable cause for an arrest is an absolute bar to a § 1983 claim for false arrest, false imprisonment, or malicious prosecution. *Jones v. Webb,* 45 F.3d 178, 183 (7th Cir. 1995). Probable cause exists when "the facts and circumstances within [the officers']

20

knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). *See also, Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir. 1996).

In this case, Mr. Washington admits that he was speeding, refused to exit his vehicle when directed to do so by Officer Simpson, and then fled the scene. Even if Plaintiffs had filed a Response Brief, it is difficult to envision a reasonable challenge to Defendants' claim that they had probable cause to arrest Plaintiffs. Because Defendants had probable cause to arrest Plaintiffs, Plaintiffs' false imprisonment claims must fail. *Sheik-Abdi v. McClellan,* 37 F.3d 1240, 1247 (7th Cir. 1994)

## VIII. COUNT XIX: STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to succeed on a claim of intentional infliction of emotional distress, Plaintiffs must demonstrate that: 1) Defendants' conduct was extreme and outrageous; 2) Defendants either intended that their conduct should inflict severe emotional distress or knew that there was a high probability that their conduct would cause severe emotional distress; and 3) Defendants' conduct did in fact cause severe emotional distress. *Doe v. Calumet City,* 161 Ill.2d 374, 392, 641 N.E.2d 498, 506 (Ill. 1994); *Oates v. Discovery Zone,* 116 F.3d 1161, 1174 (7th

Cir. 1997).

Plaintiffs allege that they suffered severe emotional distress as a result of the arresting officers' behavior in the White Castles' parking lot, claiming that the officers used racial slurs while arresting them, compared choke holds, and laughed at Plaintiffs. Defendants present a persuasive argument that, even if the officers used racial slurs (and Defendants insist that they did not), these mere insults and indignities are insufficient to satisfy *Doe's* "Outrageous!" test. *Doe,* 641 N.E.2d at 507 ("mere insults, indignities, threats" etc are insufficient to support an IIED claim.) In addition, Plaintiffs have presented paltry evidence that they actually experienced severe emotional distress. Therefore, Defendants' Motion for Summary Judgment is Granted.

Having granted Defendants' Motions for Summary Judgment on all counts of Plaintiffs' Amended Complaint, there is no need to discuss Defendants' arguments regarding Plaintiffs' damages estimates and evidence.

## CONCLUSION

Plaintiffs claim that Defendants acted improperly when they stopped, pursued, and arrested Plaintiffs during the early morning hours of September 3, 2001. Plaintiffs' version of events, however, is not supported by the videotapes and audiotapes of those incidents, and is contradicted by eyewitness

testimony. Plaintiffs' position is further compromised by their failure to submit a Response and Rule 56.1 Response to Defendants' Statements of Material Fact. The failure to submit these filings resulted in the Court's ruling that Plaintiffs have admitted all material facts properly set forth by Defendants in their Rule 56 Statements of Fact. For the foregoing reasons, the Court denies Plaintiff's motions and grants the Commissioner's Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment be, and the same hereby are, **GRANTED**.


March 12, 2003          ENTER:

ARLANDER KEYS
United States Magistrate Judge

23